J-S08013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: V.S.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.W., FATHER | : : : : : : | |
| | : | No. 1445 WDA 2019 |

Appeal from the Order Entered August 19, 2019
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  15 of 21-019

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 10, 2020**

S.W., ("Father"), appeals from the order entered August 19, 2019, granting the petition filed by the Westmoreland County Children's Bureau (the "Agency") to terminate his parental rights to minor child, V.S.W. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), (11), and (b).  We affirm.

The facts and procedural history of this case are as follows.  Child, born in July 2012, previously resided with C.M., ("Mother"), as Father has been incarcerated since Child was three-months old.  Trial Court Order, 8/19/19, at 4, ¶ 17.  "On May 8, 2017, the Agency received a referral concerning the truancy of [] Child's brother" which caused Desiree Binda-Marshall, the Agency caseworker, to attempt to visit Mother's home the next day.  ***Id.*** at 4-5, ¶ 17.  Marshall was not permitted to enter the home.  ***Id.***  On May 23, 2017, Marshall "made an unannounced visit" and "was able to enter the home with police

assistance." *Id.* at 5, ¶ 17.  "The home was in deplorable condition" and, as such, the Agency requested and assumed emergency custody of Child and her siblings.  *Id.*

The court adjudicated Child dependent on June 27, 2017.  *Id.* at 5, ¶ 20. Thereafter, the Agency filed a petition to involuntarily terminate Father's parental rights on January 30, 2019, and an amended petition on April 16, 2019.  *Id.* at 1.  The trial court held evidentiary hearings on June 20, 2019[1] and August 1, 2019.[2]

During the June 20, 2019 hearing, the trial court took judicial notice of Father's criminal history, which includes convictions for "simple assault, burglary, theft, criminal trespass, disorderly conduct, and sexual assault charges."  *Id.* at 6, ¶ 22.  Most notably, on September 4, 2007, Father pled guilty to two counts of indecent assault of persons less than 13 years of age as well as indecent assault of persons less than 16 years of age.  *Id.* Additionally, on September 14, 2012, Father was convicted of failing to register as a sexual offender and failure to provide accurate information.  *Id.*

---

[1] At the June 20, 2019 termination hearing, Mother voluntarily relinquished her parental rights to Child.  Trial Court Order, 8/19/19, at 4, ¶ 4.

[2] Attorney Judith Cisek represented the Child as her legal interests counsel and Attorney Dorean Petonic served as guardian *ad litem* ("GAL") to represent Child's best interests during the June 20, 2019 hearing as well as the August 1, 2019 hearing. *See In re Adoption of L.B.M.*, 161 A.3d 172, 179-180 (Pa. 2017).

The trial court summarized the relevant testimony presented during the August 1, 2019 hearing as follows.

[First,] Vijaya Greene of ProjectSTAR [testified. She explained] that Father sent a few letters to [] Child [which] state[d] generally that he thinks about [Child] and [asked] what was going on in [Child's] life[.] [Greene stated, however, that Father] has not seen or [spoken] to [] Child or provided financial assistance since she has been in Agency custody. [As such, Greene explained that] Child would not know Father if she saw [him] and [that Child] has no attachment to [Father.]

[Next,] Brenda Healey, a behavior health technician at ProjectSTAR . . . testified[.] [Healey explained that she] did not talk to [] Child about [] Father, but [during their conversations,] Child stated [that] she wanted to remain with her foster parents. [Healey also stated that, because] Child has had no [tele]phone contact with Father[, upon his release from incarceration, Father] would require many services before reunification with [] Child could be achieved, and this process could take [at least] a year.

Desiree Binda-Marshall, the [Agency's] caseworker [also] testified at the termination hearing[.] [Marshall initially explained how the Agency came into contact with Child] and that [] Child has [now] been in the Agency's custody for 25 months. [Marshall explained that] Child is [currently] thriving with her foster family [and that since Child has been in their care,] [h]er speech and school performance h[as] improved. [Marshall testified that Child] views her foster parents and siblings as her family [and refers] to her foster mother as "Mommy." [With regard to Father, Marshall testified that, while he did send letters to Child, he failed to complete any of the services provided to him in prison. Lastly, Marshall opined that terminating Father's parental rights would best serve Child's interest because Child does not know Father and termination would enable Child to be adopted by her foster parents.]

[Finally,] Father testified at the termination proceeding[.] He object[ed] to the termination of his parental rights. [Father explained that he] attempted to stay in touch with his children by sending them letters and art projects. [Father also stated that he] requested visits, which never came to fruition. [As for his criminal convictions, Father explained that he] has filed [six] or

- 3 -

[seven] appeals [regarding] his . . . sex offender [convictions], all of which [he] denie[s], [and stated that] he believes that someday he will ultimately be exonerated. [Lastly, Father stated] that he anticipate[d] being released from incarceration in 2022.

Trial Court Order, 8/19/19, at 12-13.

On August 19, 2019, the trial court entered an order granting the petition seeking to involuntarily terminate Father's parental rights to the Child pursuant to sections 2511(a)(2), (5), (8), (11), and (b).[3] This timely appeal followed.[4]

Father raises the following issue on appeal:[5]

[Whether the trial court erred by terminating his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), (11), and (b)?]

**See generally** Father's Brief at 4.

We review orders terminating parental rights according to the following standards.

_____

[3] In its order, the trial court also stated that Child "may be adopted without further consent of, or notice to, [Father.]" Trial Court Order, 8/19/19, at 15-16.

[4] Father filed a notice of appeal together with a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on September 12, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 30, 2019, expressly relying on its August 19, 2019 order.

[5] Father raises three separate issues in his statement of questions involved. **See** Father's Brief at 4. In the argument section of his brief, however, Father develops only one issue, which he did not include in his statement of questions. **See id.** at 7. Thus, Father's brief violates the Pennsylvania Rules of Appellate Procedure. **See** Pa.R.A.P. 2116. Nonetheless, as Father's appellate brief can be read as an overall challenge to the termination of his parental rights, our review is not hampered and we decline to find waiver. **See Savoy v. Savoy**, 641 A.2d 596, 598 (Pa. Super. 1994).

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). This Court may affirm the trial court's decision regarding the termination of parental rights under any single subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We conclude that termination was proper under section 2511(a)(2).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

- 5 -

(a) **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108,

- 6 -

1117 (Pa. Super. 2010). "[A] parent's incarceration is relevant to [a] [S]ection [2511](a)(2) analysis, and depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control, or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

Herein, Marshall's testimony at the August 1, 2019 hearing provided clear and convincing evidence which supports the termination of Father's parental rights pursuant to Section 2511(a)(2). Specifically, we note the following exchange:

> **[Agency counsel]**: The Agency filed the [termination] [p]etition under a number of grounds, the first being [Section] 2511(a)(2) of the Adoption Act. Has father demonstrated repeated incapacity, abuse, neglect or refusal?
>
> **[Marshall]**: Yes.
>
> **[Agency counsel]**: How has he done that?
>
> **[Marshall]**: He has been incarcerated this entire time, plus he [has] [] not completed any services in the prison.
>
> **[Agency counsel]**: Has this incapacity, abuse, neglect, or refusal caused [Child] to be without essential parental care, control, or subsistence necessary for her wellbeing?
>
> **[Marshall]**: Yes.
>
> **[Agency counsel]**: How did [Father's] behavior cause [Child] to be without parental care or control?
>
> **[Marshall]**: He was incarcerated at the time that we removed [Child] from [M]other's home.
>
> **[Agency counsel]**: And [Father] remains incarcerated to this day?
>
> **[Marshall]**: Yes.

N.T. Permanency Hearing, 8/1/19, at 37-38. Marshall's testimony demonstrated that Father, due to his continuous incarceration and unwillingness to participate in any services provided to him in prison, cannot provide the parental care, control or subsistence necessary. Father's testimony established that he would not be released from prison until 2022. Trial Court Order, 8/19/19, at 13. Further, Healey, the behavior health technician at ProjectSTAR, testified that, if Father were released from prison, he would require multiple services before reunification, which could take at least one year. *Id*. at 12. We therefore discern no abuse of discretion in terminating Father's parental rights pursuant to Section 2511(a)(2).

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and

welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

***Z.P.***, 994 A.2d at 1121, *quoting **In re C.S.***, 761 A.2d 1197, 1202 (Pa. Super. 2000). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. ***See In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011). Additionally, the court may emphasize the safety needs of a child. ***See In re K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. ***Id.*** "[A] parent's basic constitutional right to the custody and rearing of . . . [his] child is converted, upon the failure to fulfill . . . [his] parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Here, all relevant testimony presented at the August 1, 2019 hearing proved that there is no bond between Child and Father. Indeed, it is undisputed that Child does not know Father's name and would not recognize Father if she saw him. ***See*** Trial Court Order, 8/19/19, at 12. Testimony also established that Child is thriving in her foster placement with foster parents who provide for her emotional, physical, and developmental well-being and that Child wishes to be adopted by them. Thus, we discern no abuse of

discretion in the trial court's conclusion that Child's needs and welfare are best served by termination of Father's parental rights.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2020